**STATE of Tennessee, Appellant,**

v.

**Estel McCoy DUER, Appellee (Defendant).**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 27, 1981.

Permission to Appeal Denied by Supreme Court May 4, 1981.

Walter S. Clark, Jr., Nashville, for appellee.

William M. Leech, Jr., Atty. Gen. of Tennessee, James A. DeLanis, Asst. Atty. Gen. of Tennessee, Thomas H. Shriver, Dist. Atty. Gen., James Walsh, Asst. Dist. Atty. Gen., Nashville, for appellant.

OPINION

DUNCAN, Judge.

This record presents an interlocutory appeal filed by the State pursuant to Rule 9

of the Tennessee Rules of Appellate Procedure, after the trial court had granted the defendant's motion to suppress the results of a blood alcohol test on the grounds that the defendant had been illegally arrested.

The issue before us is whether the trial court erred in suppressing the results of the blood alcohol test. We find that it did.

At the hearing in the trial court, officer Don Champion testified that on February 9, 1980, he investigated an automobile accident at an intersection in Nashville. He arrived on the scene within approximately thirteen (13) minutes of the time the accident occurred. His investigation revealed that a 1977 Datsun automobile and a 1972 Chevrolet pick-up truck had collided in the middle of the intersection. From the positions of the vehicles, officer Champion determined that the driver of the truck had attempted to make a left-hand turn and had been struck by the automobile, which had been traveling straight in the opposite direction. When the officer arrived on the scene the radiators of both vehicles were steaming, the keys were in the ignition switch of the truck, and the defendant was standing some ten (10) to fifteen (15) feet away from the truck.

The defendant admitted to the officer at the scene that he had been driving the truck and had attempted to make a left-hand turn across the traffic when he was struck by the automobile. He also admitted that he had been driving on a revoked driver's license. The officer confirmed with the police dispatcher that the defendant's driver's license had been revoked.

According to officer Champion, he smelled the odor of alcohol on the defendant. The defendant's eyes were bloodshot, his speech was slightly slurred, and he was unstable on his feet. The officer testified that the defendant was definitely under the influence of alcohol, and that in his opinion, the defendant was "publicly drunk" at the time he saw him.

At any rate, after observing him, the officer requested that a blood alcohol testing unit be brought to the scene. Before the arrival of the unit, the officer testified that he arrested the defendant on "a revoked driver's license charge." When the testing unit did arrive, a test was administered to the defendant, with the result showing that he had .14 percent by weight of alcohol in his blood system. Thereafter, the officer took the defendant to the police station, took him before a magistrate, and subsequently charged him in warrants with driving under the influence of intoxicants and with driving on a revoked driver's license.

In Tennessee it is clear that an officer may make a valid warrantless misdemeanor arrest "[f]or a public offense committed or a breach of the peace threatened in his presence." T.C.A. § 40–803(1) (1975). Further, if the misdemeanor is not committed in the officer's presence then a warrantless arrest is not legal. *Robertson v. State*, 184 Tenn. 277, 198 S.W.2d 633 (1947); *State ex rel. Thompson v. Reichman*, 135 Tenn. 685, 188 S.W. 597 (1916); *Hurd v. State*, 119 Tenn. 583, 108 S.W. 1064 (1907); *St. John v. State*, 491 S.W.2d 629 (Tenn.Cr.App.1972); *Shelton v. State*, 3 Tenn.Cr.App. 310, 460 S.W.2d 869 (1970). Also, a warrant is not dispensed with just because others have communicated facts to the officer to show that the offense has been committed. *Hurd v. State, supra.*

In the present case, the defendant points out that the office never personally saw the defendant driving the automobile, and thus argues that the offense of "driving on a revoked license" was not committed in the officer's presence. Therefore, he reasons that the officer's initial arrest of him for this offense was illegal and the evidence showing the results of the blood alcohol test flowed from the illegal arrest. Thus, he contends that the trial court properly suppressed this evidence. We disagree.

Assuming *arguendo* that the officer had no right to arrest the defendant for driving on a revoked license, it does not make his initial arrest illegal, because under the evidence as we have set forth above, the officer could have arrested the defendant for public drunkenness. When the officer appeared at the scene and observed the defendant's state of intoxication, as such

was described in this record, then unquestionably the offense of public drunkenness was committed in the officer's presence, and an arrest for that offense would have been proper. The fact that the officer did not articulate to the defendant that he was being arrested for public drunkenness, but rather advised the defendant that he was being arrested for the offense of driving on a revoked license does not carry with it the conclusion that the arrest was illegal.

Our research discloses that the courts which have been confronted with similar questions as we are dealing with in the present case, have consistently held that when an officer makes an arrest which is supported by probable cause for an arrest for one offense, then neither his subjective reliance on an offense for which probable cause does not exist nor his statement of the wrong offense to the person arrested will transform the arrest into an illegal arrest. *See e. g. United States v. Dunavan,* 485 F.2d 201 (6th Cir. 1973); *United States v. Saunders,* 476 F.2d 5 (5th Cir. 1973); *Klingler v. United States,* 409 F.2d 299 (8th Cir. 1969); *United States v. Carr,* 445 F.Supp. 1383 (D.C.Conn.1978); *State v. Cloman,* 254 Or. 1, 456 P.2d 67 (1969); *State v. Frailey,* 6 Or.App. 8, 485 P.2d 1126 (1971).

In 6A C.J.S. *Arrest* § 21 (1975), the rule is stated as follows:

> Where an officer makes an arrest which is properly supported by probable cause to arrest for one offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.

Further, we note a comment that appears in our Supreme Court's recent opinion in the case of *State v. McNeal,* No. 9140—Madision Criminal (Jackson, February 2, 1981—opinion not designated for publication). In that case, our Supreme Court was dealing with the question of whether the police had probable cause to make a warrantless felony arrest. In the face of the testimony of one of the arresting officers that he did not feel that he had enough evidence to obtain an arrest warrant, the Court stated:

> [W]e are of the opinion that it is not the officer's subjective judgment concerning probable cause that is controlling. What is controlling are the facts and circumstances within the officer's knowledge at the time of the arrest.

By analogy, the above quoted language is equally applicable to the factual situation we have in the present case. Regardless of what offense the officer may have subjectively decided that the defendant had committed, the controlling point is whether the facts and circumstances would have justified an arrest for any offense.

■ Thus, we conclude that if sufficient facts and circumstances are present to support a defendant's legal arrest for one offense, it is totally without significance that the officer's subjective interpretation of the facts caused him to articulate to the defendant the name of some other offense for which the facts would not have authorized an arrest. In other words, the test does not rest on the officer's subjective conclusion as to what offense has been committed. Rather, the test is whether the facts and circumstances present are sufficient to enable the court to see that some offense has been committed that would have justified a legal arrest.

From all of the foregoing, we conclude that the defendant's arrest was legal, and since the evidence was more than ample to give the officer "reasonable grounds to believe such person to have been driving under the influence of an intoxicant," it was proper to give the defendant a test to determine the alcohol content of his blood. T.C.A. § 55–10–406 (Supp.1980).

The judgment of the trial court suppressing the results of the blood alcohol test is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

TATUM and BYERS, JJ., concur.